UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BARRETT PAVING MATERIALS, INC., )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CONTINENTAL INSURANCE COMPANY, )<br>*et al.*, )<br>)<br>    Defendants. ) | CIVIL NO. 04-61-B-S |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Before the Court is Plaintiff's Complaint for a declaratory and money judgment (Docket #1). The Court held a bench trial on April 21, 2006, at which it received documentary evidence and heard the arguments of both parties. In accordance with Federal Rules of Civil Procedure 52 and 55(b), the Court has reviewed all of the evidence presented and now FINDS for the Plaintiff. Specifically, the Court makes the following findings of fact and conclusions of law:

**I.     FINDINGS OF FACT**

    **The Parties**

    1.     Barrett Paving Materials, Inc. ("Barrett") is a Delaware corporation with a principal place of business located in Roseland, New Jersey.

    2.     Barrett is a wholly owned subsidiary of Colas, Inc.

    3.     Michigan Mutual Insurance Co. ("Michigan Mutual") is located in Farmington Hills, Michigan.

**The Third-Party Complaint**

4.      Barrett's principal business activity is road construction.

5.      In 1979, Barrett Paving purchased a waterfront storage facility ("the facility") located in Bangor, Maine on the banks of the Penobscot River.

6.      Barrett operated the facility from 1979 to 2004.

7.      At its Bangor, Maine location, Barrett Paving stored liquefied asphalt, which was sold for use in conjunction with road construction.

8.      The liquid asphalt was not manufactured on the site, but was delivered by barges to the facility.

9.      On or about May 20, 2003, Barrett was served a Third-Party Complaint by Citizens Communications Company ("Citizens") alleging that Barrett had contributed to the pollution of the Penobscot River.  (Pl. Ex. 1.)

10.     This Third-Party Complaint included five counts:  CERCLA contribution, declaratory judgment, common law contribution, common law indemnity, and negligence.

11.     The Third-Party Complaint alleges that Barrett Paving owned and operated a tar and asphalt plant in Bangor, Maine that had been in operation since 1937.

12.     In its Third-Party Complaint, Citizens seeks to impose liability on Barrett Paving for environmental cleanup costs and other harms arising out of the discharge of pollutants into the Penobscot River for which the City of Bangor has sought to hold Citizens legally responsible.

13. The Third-Party Complaint alleges that the Barrett Plant caused or contributed to the contamination of the Penobscot River in various ways:

> ¶ 15. On one or more occasions since Barrett Paving Materials, Inc. has owned and operated the Barrett Plant, asphalt materials containing Poly-Aromatic Hydrocarbons, also known as PAHs were released from the Barrett Plant into the Penobscot River.
>
> ¶ 16. Upon information and belief, the soil at the Barrett Plant is contaminated with substances that contain PAHs.
>
> ¶ 17. Sewers historically located in or near the Barrett Plant drained, directly and without treatment, into the Penobscot River.
>
> ¶ 18. Tidal action of the Penobscot River causes contamination from the Barrett Plant to be flushed into the River.
>
> ¶ 19. Upon information and belief, hazardous substances and hazardous wastes from the Allied [sic] plant were released into the Penobscot through sewers, over land flow of water and/or tidal action.

### Search for Insurance Policy Documents

14. Anthony L. Martino is the Vice President, General Counsel, and Secretary to Colas, Inc.

15. Following the service of the Third-Party Complaint, Mr. Martino oversaw an internal search of business records within Barrett and Colas, Inc. for insurance policies issued to Barrett.

16. This internal search did not produce any copies of insurance polices, but did produce a number of business records. These included:

    A. A memorandum from Dominique Leveille, dated March 29, 1983. (Pl. Ex. 2.) This Barrett internal memorandum concerned Barrett's 1983 insurance programs, and

3

discussed the fact that Financial Guardian was Barrett's insurance broker and brokered Barrett's insurance coverage, including CGL coverage from Michigan Mutual.

  B. A number of insured endorsements to Michigan Mutual from various periods from 1985 to 1987 (Pl. Ex. 4.)

  C. An endorsement for policy change # 80 to Michigan Mutual's insurance policy. (Pl. Ex. 5.)

  D. A corporate memorandum from Gerald Taylor of Barrett Paving, dated October 23, 1985 (Pl. Ex. 6.), which discusses how to use and prepare loss forms in reporting losses to Barrett's insurers.

  E. A Michigan Mutual General Liability Loss Notice (Pl. Ex. 7.), which identifies Michigan Mutual as the insurer, names policy number SR 32-0-72010-2, and names the effective policy term as April 1, 1985, through April 1, 1986.

  F. A Michigan Mutual Automobile Loss Notice (Pl. Ex. 8.), which names the effective policy term as April 1, 1985, through April 1, 1986.

17. Dominique Leveille is currently employed by Colas, Inc. in Morristown, New Jersey.

18. Mr. Leveille was the Vice President of Finance and Treasurer for Barrett from 1979 to 1990.

19. During that time, Mr. Leveille was responsible for obtaining insurance coverage for Barrett Paving.

20. Mr. Leveille used an insurance broker to obtain insurance coverage for all of Barrett's locations and operations, including the Bangor, Maine location.

21. From 1979 to 1983, Mr. Leveille obtained this coverage from the brokerage firm of Alexander & Alexander.

22. In 1983, Barrett changed brokers and obtained insurance coverage through Financial Guardian of Troy, Michigan.

23. Mr. Martino contacted AON, the successor to Financial Guardian, to request any records AON might have of policies issued to Barrett by Michigan Mutual. AON had no copies or records.

24. On or about July 16, 2003, Mr. Martino tendered the defense of the third-party action to Michigan Mutual Insurance Company. (Pl. Ex. 10.)

25. In his letter, Mr. Martino stated that Michigan Mutual provided general liability and excess liability coverage to Barrett from April 1, 1983 to April 1, 1988.

26. Mr. Martino forwarded a Second Notice of a New Claim to Michigan Mutual on August 7, 2003. (Pl. Ex. 11.)

27. John G. Lorence of Amerisure Insurance subsequently responded to Mr. Martino's letter. (Pl. Ex. 12.)

28. Mr. Lorence acknowledged receipt of Mr. Martino's letter and indicated that Michigan Mutual would undertake an investigation of the claim.

29. Mr. Lorence, in his letter, indicated that he did not have possession of the policy issued by Michigan Mutual to Barrett Paving, and indicated further that any policy of the 1983-1988 period would include a pollution exclusion precluding coverage for the gradual release of pollutants.

30. Mr. Martino responded to Mr. Lorence's letter on September 4, 2003. (Pl. Ex. 13.)

31. In Mr. Martino's letter of September 4, 2003, he provided Mr. Lorence with documents evidencing copies of available business records of Barrett Paving that Barrett was relying upon to establish coverage with Michigan Mutual pursuant to policy number SR-32-0-72010-2. The letter also asserted that the policies would provide coverage for the sudden and accidental discharge of pollutants.

32. Mr. Martino received a response from Mr. Lorence on or about September 9, 2003. (Pl. Ex. 14.)

33. In his September 9, 2003 letter, Mr. Lorence took the position that all policies issued by Michigan Mutual would contain some form of pollution exclusion.

34. Mr. Martino responded to Mr. Lorence's letter with a letter dated September 17, 2003, providing additional Barrett business records that Barrett was relying upon to establish the coverage provided by Michigan Mutual pursuant to policy number SR-32-0-72010-2. (Pl. Ex. 15.)

35. Mr. Martino received a response letter from Mr. Lorence on September 26, 2003. Mr. Lorence stated that he did not dispute "that Michigan Mutual issued some policies to Barrett Paving in the 1980s." (Pl. Ex. 16.)

36. Both parties agree that from 1982 to December 31, 1985, Michigan Mutual used the Comprehensive General Liability Policy form. (Pl. Ex. 19.)

37. This form contained a pollution exclusion, but provided that "this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental."

38. The terms of any pre-1986 policies issued to Barrett by Michigan Mutual are not in dispute.

39. The parties concede that any policies issued by Michigan Mutual after January 1, 1986 would contain a total pollution exclusion.

40. Neither party possesses a copy of any insurance policy issued by Michigan Mutual to Barrett Paving from April 1, 1983 to April 1, 1988.

41. Michigan Mutual concedes that it probably issued insurance policies to Barrett in 1987 and 1988, but makes no concession as to the issuance of policies from 1983 through 1986.

42. Barrett is aware of one incident of sudden and accidental discharge, on July 21, 1988, when hot asphalt spilled from a barge into the Penobscot River while the barge was being unloaded.

## II.   CONCLUSIONS OF LAW

43. The question of whether Michigan Mutual issued insurance policies to Barrett is a question of contract law.

44. A party attempting to enforce an insurance policy has the burden of establishing its existence. Smile, Inc. v. Moosehead Sanitary Dist., 649 A.2d 1103, 1105 (Me. 1994)

45. This Court will find that a contract exists "if the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its exact meaning and fix exactly the legal liabilities of each party." Sullivan v. Porter, 861 A.2d 625, 631 (Me. 2004).

46. Plaintiff has met this burden, and established that a contract for insurance policy coverage existed between Michigan Mutual and Barrett Paving between April 1, 1983 and April 1, 1988 under policy number SR-32-0-7201-2.

47. The policies issued by Michigan Mutual to Barrett Paving between April 1, 1983 and December 31, 1985 contained a pollution exclusion, but also contained an exception for releases of pollutants that were "sudden and accidental."

48. The policies issued by Michigan Mutual to Barrett Paving between January 1, 1986 and April 1, 1988 contained a total pollution exclusion.

49. An insurer has a duty to defend "if there is any potential basis for recovery against the insured and the recovery is an insured risk." York Golf & Tennis Club v. Tudor Ins. Co., 845 A.2d 1173, 1175 (Me. 2004).

50. This duty to defend exists even where there is ambiguity as to whether there is a duty to indemnify. See Barrett Paving Materials, Inc. v. Continental Ins. Co., 2005 WL 2877742 at *6 (D. Me. 2005).

51. The underlying Third-Party Complaint alleges that Barrett Paving released pollutants into the Penobscot River, but does not specify whether such releases were gradual or sudden and accidental.

52. A duty to defend is found solely based on the allegations of the underlying complaint, and may arise even absent a specific allegation of a sudden and accidental release. Travelers Indemnity Company v. Dingwell, 414 A.2d 220, 224-226 (Me. 1980).

53. Michigan Mutual has a duty to defend Barrett Paving against Citizen's Third-Party Complaint for the time period between April 1, 1983 and December 31, 1985.

54. Michigan Mutual has no duty to defend Barrett Paving against Citizen's Third-Party Complaint for the time period between January 1, 1986 and April 1, 1988.

### III. DAMAGES

Past and future costs associated with remediation of the discharge of pollutants can properly be considered "damages," and the Court may impose a duty to defend on an insurer, where a private third-party seeks to recover damages resulting from the discharge of pollutants. <u>Patrons Oxford Mut. Ins. Co. v. Marois</u>, 573 A.2d 16, 18-20 (Me. 1990).

On the basis of the above findings and conclusions, the Court hereby ORDERS that Judgment on behalf of Plaintiff be entered, and DECLARES that Defendant Michigan Mutual has a duty to defend Plaintiff against the claims set forth in the Third-Party Complaint.

This Court has previously entered a summary judgment against Defendant Continental Insurance Co. (Docket # 87), which includes costs for the declaratory judgment action, an award of damages for the defense and expenses incurred in the underlying case, and an order to provide a defense for Barrett in the underlying case. Defendant Michigan Mutual must now shoulder its proportionate share of the costs. Continental Insurance, Michigan Mutual, and Barrett Paving are requested to confer and attempt to submit to the Court a proposed order setting out the liability and costs of each defendant by May 17, 2006. In the absence of an agreed order the matter shall be set for hearing.

SO ORDERED.

                            /s/ George Z. Singal_____
                            Chief United States District Judge

Dated this 2nd day of May, 2006.